

1   Gregory J. Marshall (#019886)
    Emily R. Parker (#036286)
2   SNELL & WILMER L.L.P.
    One East Washington Street
3   Suite 2700
    Phoenix, Arizona 85004-2556
4   Telephone: 602.382.6000
    gmarshall@swlaw.com
5   eparker@swlaw.com

6   *Attorneys for Defendant Raley's Arizona LLC
    d/b/a Bashas'*

7

8                IN THE UNITED STATES DISTRICT COURT

9                    FOR THE DISTRICT OF ARIZONA

10

11  Renay Kristapher, individually, and on        No. CV-24-02037-PHX-KML
    behalf of those similarly situated,
12                                                 **RALEY'S ARIZONA LLC'S
                    Plaintiff,                     MOTION TO DISMISS
13                                                 PLAINTIFF'S CLASS ACTION
         v.                                        COMPLAINT**
14
    Raley's Arizona LLC d/b/a Bashas',
15
                    Defendant.
16

17

18       Defendant Raley's Arizona LLC ("Raley's") moves to dismiss Plaintiff Renay

19  Kristapher's single-count Class Action Complaint, in accordance with Rules 12(b)(1) and

20  12(b)(6), Fed. R. Civ. P.

21                          **INTRODUCTION**

22       This lawsuit is one of a recent spate in which plaintiffs are attempting to contort an

23  Arizona law involving pretexting (*i.e.,* pretending to be someone else to obtain that

24  person's propriety information) and phone records into an expansive and unprecedented

25  privacy right involving marketing emails. Arizona's Telephone, Utility and

26  Communication Service Records Act, A.R.S. § 44-1376, *et seq.* ("TUCSRA") has been on

27  the books for nearly twenty years and has never, in the history of its existence, been

28  applied in any context outside of pretexting.

*Snell & Wilmer*
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Now, similar to various other suits pending in this district, Plaintiff Renay Kristapher alleges that Raley's (d/b/a Bashas') obtained certain information from tracking pixels embedded in marketing emails she signed up to receive. This information includes, for example, whether the email was opened, the date and time it was opened, "and other details associated with Plaintiff accessing the email," such as "how many times the emails were read, whether the emails were forwarded, what device was used to access the emails, and the IP address associated with the device(s) used to access the emails." Compl. ¶¶ 43, 62.

By Plaintiff's own account, this practice is not only common but ubiquitous. *See, e.g.*, Compl. ¶ 2 (describing online tracking of customers by companies as "ubiquitous"); ¶ 26 (claiming that 40% of all emails are tracked using some form of tracking pixel and describing the use of email tracking as "endemic"); ¶ 31 (citing a 2018 study by Princeton researchers finding that 85% of emails in the data set contained embedded third-party content and 70% contained trackers). While prevalence is not a defense, that Raley's is at most engaged in the same marketing practices as the vast majority of American businesses have been for years strongly counsels against any conclusion that it is unlawful. Moreover, as described below, courts have widely and consistently concluded that tracking or collecting this type of information does not implicate actionable privacy interests, nor would it be "highly offensive" to a reasonable person.

The Court should dismiss Plaintiff's claim against Raley's for two independently sufficient reasons. First, Plaintiff's allegations of privacy-based harms does not rise to the level of a sufficient injury under Article III of the United States Constitution, and she therefore lacks standing to bring this claim. Second, the TUCSRA does not apply here, including because Raley's is not a "communication service provider," and the information allegedly collected by the tracking pixels is not a "communication service record" within the meaning of the statute.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff's Complaint is largely and vaguely a critique of the practice of companies gathering information about consumers in furtherance of improving their marketing efforts and ultimately leading to increased revenue and sales. Compl. ¶¶ 2-9. Indeed, Plaintiff complains about the "all-seeing eye of corporate America and its insatiable appetite for consumer data" (Compl. ¶ 8), "pervasive" or "ubiquitous" online tracking, (Compl. ¶¶ 2, 6), and the overwhelmingly common practice of companies using tracking technology to assess and increase the effectiveness of their marketing email communications. Compl. ¶¶ 24-31.

Plaintiff alleges that she receives marketing emails from Raley's multiple times per month. Compl. ¶ 41. She further alleges that she opened one such email in February 2024 that contained one or more tracking pixels. Compl. ¶ 42. Plaintiff claims that when she "opened the email, [Raley's] obtained email access logs reflecting that Plaintiff had opened the email, the date and time it was opened, and other details associated with Plaintiff accessing the email." Compl. ¶ 43. The Complaint summarily alleges "upon information and belief" that the email "also triggered disclosures to embedded third parties." Compl. ¶ 44. Finally, Plaintiff alleges that she did not consent to the tracking pixels. Compl. ¶ 45.

The Complaint alleges that the signal generated by the tracking pixel contains the following information: (1) that the email was opened; (2) when it was opened; (3) how many times it was opened; (4) how long it remained open; (5) whether the email was forwarded; (6) the device used to open and review the email; and (7) the IP address associated with the device, "revealing the approximate location of the consumer when the email was opened and reviewed." Compl. ¶ 21.

The Complaint further alleges that "[w]hen Plaintiff opened the email, [Raley's] obtained email access logs reflecting that Plaintiff had opened the email, the date and time it was opened, and other details associated with Plaintiff accessing the email. While Plaintiff alleges that the email tracking pixels "intruded into [her] private affairs," and

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

1    "revealed [her] private information," *id.* ¶ 66, she identifies no injury caused by the

2    supposed intrusion.  Plaintiff's sole cause of action alleges that Raley's use of the tracking

3    pixels violates the TUCSRA, by "knowingly procuring" Plaintiff's "communication

4    service records" without her consent.  *Id.* ¶¶ 59-68.

5                              **ARGUMENT**

6    **I.    PLAINTIFF LACKS STANDING BECAUSE SHE HAS NOT ALLEGED AN**
7    **      INJURY UNDER ARTICLE III.**

8         **A.  Legal Standard**

9         Under Rule 12(b)(1), a claim must be dismissed for lack of subject matter

10   jurisdiction when a plaintiff fails to allege facts sufficient to establish standing under

11   Article III of the United States Constitution.  *Table Bluff Rsrv. (Wiyot Tribe) v. Philip*

12   *Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001).  A plaintiff bears the burden of

13   demonstrating that she has standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31

14   (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also*

15   *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

16        To establish Article III standing, Plaintiff "must show (i) that [she] suffered an

17   injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury

18   was likely caused by the defendant; and (iii) that the injury would likely be redressed by

19   judicial relief."  *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defenders of Wildlife*, 504

20   U.S. 555, 560-61 (1992)).  As Justice Roberts succinctly put it, "No concrete harm, no

21   standing."  *TransUnion LLC*, 594 U.S. at 442.[1]

22        "Article III standing requires a concrete injury even in the context of a statutory

23   violation," which requires more than a "bare procedural violation divorced from any

24   concrete harm." *TransUnion LLC*, 594 U.S. at 440.  In other words, "under Article III, an

25   injury in law is not an injury in fact." *TransUnion,* 594 U.S. at 427. The Arizona

26   _____

27   [1] Moreover, *every* class member must have Article III standing.  "Article III does not give
     federal courts the power to order relief to any uninjured plaintiff, class action or not."
28   *TransUnion LLC*, 594 U.S. at 431.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Legislature's creation of "a cause of action," does "not relieve courts from the responsibility to independently decide whether a plaintiff has suffered a concrete harm." *Id.* at 426; *see also id.* ("[T]his court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

Instead, when a plaintiff has alleged an intangible harm, as Plaintiff has done in this case, the Court must consider whether the alleged harm "has a 'close relationship' to a harm 'traditionally recognized as providing a basis for a lawsuit in American courts" to determine whether a plaintiff has sufficiently alleged a concrete injury. *Id.* at 424 (quoting *Spokeo*, 578 U.S. at 341).   Plaintiff has alleged no such concrete injury.

**B.    Plaintiff's Alleged Privacy Harms Are Not Injuries Sufficient for Article III Standing.**

In an attempt to satisfy her burden to establish standing, Plaintiff has alleged that Raley's (1) "intruded into [her] private affairs," and (2) "revealed [her] private information."  Compl. at ¶ 66.  Specifically, the Complaint alleges that Raley's "intruded into [her] private affairs" by capturing data related to her interactions with Raley's marketing emails and claims that Raley's captured information about "when, how, and how many times [she] accessed [Raley's] emails," along with her "general location" at the time the emails were accessed.  *Id.*  Plaintiff also alleges that Raley's "revealed [her] private information" by capturing this same read receipt and general location data.  *Id.* These alleged injuries are analogous to state law privacy claims, such as intrusion upon seclusion and public disclosure of private facts.  But Plaintiff has failed to allege any facts that establish a concrete and particularized injury under either theory.

*1.  Plaintiff has not alleged a harm analogous to a claim of intrusion upon seclusion.*

Plaintiff's claimed injury from the capture of information about her interaction with opening her Raley's emails, including when and how often she opens them, where

she opens them, and whether she forwards them is most closely analogous to a claim for intrusion upon seclusion. This claim requires a showing that the defendant intentionally intruded into their "private affairs," and that "the intrusion would be highly offensive to a reasonable person." *Davis v. HDR Inc.*, 606 F. Supp. 3d 898, 910 (D. Ariz. 2022). Central to a claim of intrusion upon seclusion is the *private* nature of the information or affairs invaded. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023). Thus, the Court must evaluate the nature of the information allegedly captured "and determine whether the interception of that kind of information amounts to an invasion of privacy interests that have been historically protected." *Id.*; *see also TransUnion,* 594 U.S. at 424. Courts consistently hold that it does not.

At least one court recently held in a case with almost identical facts that the gathering of read receipt and similar types of online, interaction information fails to implicate the privacy concerns necessary to support a concrete injury under an invasion of privacy theory. *Hartley v. Urban Outfitters, Inc.*, No. CV 23-4891, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024). In *Hartley*, the plaintiff brought the same claim under the same statute. The plaintiff alleged that defendant Urban Outfitters ("Urban") captured similar read receipt information as alleged in this case—"including whether, when, where, and for how long an email was opened"—without plaintiff's permission, using tracking pixels embedded in Urban's promotional emails. *Id.* at *1. The plaintiff alleged that her privacy was invaded by Urban's capture of this read receipt information, analogizing her claim "to the tort of 'intrusion upon seclusion.'" *Id.* at *4. The court held that "[a]s a matter of law, … digital records reflecting merely the dates and times at which [p]laintiff opened promotional emails she signed up to receive, and the length of time she spent reading them, are not sufficiently personal to support a concrete injury."). The court concluded that the read receipt information allegedly captured was not "the kind in which a party ha[d] a reasonable expectation of privacy" and, thus, was "not sufficiently personal to support a concrete injury." *Id.* at *6–7.

Other courts have rejected similar purported harms as insufficient to establish an Article III injury.  *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 827, 835 (N.D. Cal. 2021) (concluding plaintiffs had failed to establish "Article III standing" based upon their allegations that defendants invaded their privacy by capturing "their keystrokes, mouse clicks, and page scrolling"); *In re BPS Direct, LLC*, No. 22-CV-4709, 2023 WL 8458245, at *10, 14 (E.D. Pa. Dec. 5, 2023) (explaining that the capture of "browsing activity," "viewing activity, search activity, and purchase behavior is [not] enough to establish concrete harm"); *Cook*, 689 F. Supp. 3d at 63 (finding that plaintiff's alleged invasion of privacy based upon the capture of her browsing "interactions" with defendant's website did not "qualify as a concrete injur[y] under Article III"); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (dismissing plaintiff's claims for lack of standing, explaining that defendant's capture of plaintiff's "electronic communications, including her 'mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), [and] URLs of webpages visited" was "insufficient to allege a concrete harm that bears a close relationship to the substantive right of privacy"); *see also Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (explaining that the interception of information which a party does not have a "reasonable expectation of privacy" in fails to "amount to a concrete injury").[2]

Here, Plaintiff alleges the collection of limited, discrete information by capturing the same read receipt information at issue in *Hartley*. *See* Compl. at ¶ 66.  As the *Hartley* court correctly decided, the read receipt information that Plaintiff alleges Raley's captured

---

[2] This is consistent with bedrock jurisprudence concerning legitimate expectations of privacy.  For example, in the Fourth Amendment context, the Supreme Court held that a person does not have a "legitimate expectation of privacy" regarding the numbers they dial on their own phone.  *Smith v. Maryland*, 442 U.S. 735, 742 (1979).  Likewise, "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another," *United States v. Knotts*, 460 U.S. 276 (1983), though the Court has recognized limits on pervasive and continuous surveillance, *Carpenter v. United States*, 585 U.S. 296, 334 (2018).

is not the type of information over which Plaintiff has a reasonable expectation of privacy and is not sufficiently personal enough to support a concrete injury.

The read receipt information allegedly obtained does not include personal or private facts, but merely a history of Plaintiff's interaction with emails she subscribed to receive.  Plaintiff is therefore unable to establish Article III standing solely on the basis of Raley's alleged capture of this mundane information.  Notwithstanding this fact, Plaintiff has failed to allege facts regarding *any* actual harm she has suffered as a consequence of Raley's alleged capture of this read receipt information, nor does she even attempt to suggest that the capture of such information would be "highly offensive" to a reasonable person. *See Davis*, 606 F. Supp. 3d at 910.  Instead, Plaintiff has relied upon her conclusory allegations regarding the alleged invasion of privacy.  Such allegations are insufficient to establish a concrete injury and, thus, fail to confer Article III standing.

The capture of an IP address or other general location information similarly fails to raise privacy concerns necessary to establish a concrete injury.  *See Hartley*, 2024 WL 3445004 at *7.  The Ninth Circuit, along with its sister Circuits, has consistently rejected the notion that internet users have a reasonable expectation of privacy in their IP address because such information "is provided to and used by Internet service providers for the specific purpose of directing and routing information." *United States v. VanDyck*, 776 F. App'x 495, 496 (9th Cir. 2019); *United States v. Herrington*, No. 2:20-CR-00040, 2021 WL 3487992, at *5 (D. Vt. Aug. 9, 2021) ("No federal Circuit Court of Appeals has recognized a reasonable expectation of privacy in an IP address.").  Additionally, the *Hartley* court explained that conclusory allegations that "location data" was captured, without any facts regarding "the granularity of that location data," is insufficient to "implicate privacy concerns" which give rise to a concrete injury. *Hartley*, 2024 WL 3445004 at *7.  The court reasoned that "location data" could constitute "the country of an email receipt," which clearly does not implicate privacy concerns. *Id.*  In the absence of any allegations regarding the specificity of the "location data" captured about Plaintiff, a concrete injury cannot be established. *Id.*

For these reasons, Plaintiff cannot rely on her conclusory allegations that Raley's "invaded [her] private affairs" by capturing her IP address or "general location" data to establish a concrete injury.  *See* Compl. at ¶ 66.  Plaintiff does not have a reasonable expectation of privacy in her IP address, which means that the capture of such information does not raise the privacy concerns necessary to support a concrete injury.  Plaintiff also fails to allege with specificity the granularity of the location data that Raley's allegedly obtained on her, nor does Plaintiff allege any facts about how the alleged capture of her IP address or "general location" information has caused her to incur *any* actual harm.  Plaintiff has instead decided to rest on the conclusory allegations that her privacy was invaded.  These allegations are insufficient to establish a concrete injury and, thus, fail to confer Article III standing.  Accordingly, the Court should dismiss the Complaint pursuant to Rule 12(b)(1).

2.  *Plaintiff has failed to allege a harm analogous to a claim of public disclosure of private facts.*

Plaintiff also alleges that Raley's "revealed [her] private information" by capturing the same read receipt and general location data discussed above.  This second alleged injury is most closely analogous to a claim of public disclosure of private facts.  A claim for the public disclosure of private facts requires the publication of facts "concerning the private life of another," and that the matter published is "highly offensive to a reasonable person."  Restatement (Second) of Torts § 652D (Am. Law Inst. 1977); *see also Rutledge v. Phx. Newspapers, Inc.,* 148 Ariz. 555, 556 fn. 2 (App. 1986).  At the heart of a claim for the public disclosure of private facts, clearly, are *private* facts and the *publication* of those facts.  *See Cook*, 689 F. Supp. 3d at 65.  Plaintiff fails to allege that private facts were captured, let alone published.  Accordingly, Plaintiff's second alleged harm is insufficient to establish a concrete injury.

First, the information allegedly captured by Raley's does not raise privacy concerns necessary to support a concrete injury.  As discussed above, Plaintiff does not have a reasonable expectation of privacy in her read receipt data or her IP address.  *See supra*

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona  85004-2556
602.382.6000

III(B)(1).  Moreover, Plaintiff fails to allege with specificity the general location information that Raley's allegedly obtained about her, which means that such information cannot implicate the type of privacy concerns historically protected by invasion of privacy torts.  *See id.*; *see also TransUnion,* 594 U.S. at 424.  The private "nature" of the information published is "paramount" to a claim of public disclosure of private facts.  *See Cook*, 689 F. Supp. 3d at 65.  Because the information allegedly obtained from Plaintiff is not sufficiently personal to implicate privacy concerns, it cannot be used to establish a concrete injury analogous to the public disclosure of *private* facts.  For this reason alone, Plaintiff's second alleged injury fails to confer Article III standing.

Second, Plaintiff fails to allege that Raley's published any of the information allegedly obtained.  Publication is necessary for the public disclosure of private facts and is inherent to Plaintiff's claim that Raley's "*revealed* [her] private information."  *See* Compl. at ¶ 66 (emphasis added).  Plaintiff alleges that Raley's and its third-party email provider are the only parties that obtained her read receipt and general location information.  *See id.* ¶ 43–44.  The alleged capture of Plaintiff's information by these two parties is insufficient to establish publication for a privacy claim.  *See Nienaber v. Overlake Hosp. Med. Ctr.,* No. 2:23-CV-01159-TL, 2024 WL 2133709, at *10 (W.D. Wash. May 13, 2024) ("Publicity means communication to the public at large so that the matter is substantially certain to become public knowledge; communication to a single person or a small group does not qualify."); *see also Barclift v. Keystone Credit Servs., LLC*, 585 F. Supp. 3d 748, 758 (E.D. Pa. 2022) (explaining that "[t]he bar for satisfying the 'publication' requirement in a defamation claim is much lower than the bar for establishing 'publicity' in a privacy claim").

In *Nienaber*, the plaintiff alleged that the defendant hospital invaded her privacy, under a public disclosure of private facts theory, by capturing the plaintiff's information through the use of tracking pixels embedded in the defendant's website and transmitting that information to third-party advertisers such as "Facebook and Google."  *Nienaber*, 2024 WL 2133709 at *1–2.  The defendant sought dismissal of plaintiff's claim, arguing

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona  85004-2556
602.382.6000

that plaintiff failed to allege that her information was published. *Id.* at \*10. The court agreed with defendant and dismissed plaintiff's claim, noting that while the plaintiff made conclusory allegations that Facebook sold her private information "to additional third-party marketers," she failed to "identify any specific marketers that she believe[d] [were] in receipt of her information," and did not allege that the information obtained by defendant would ever "become available to the *public at large*." *Id.* (emphasis original).

Likewise, Plaintiff's allegations regarding the capture of her read receipt and general location information by Raley's and its third-party email provider fail to establish publication. Plaintiff has failed to allege with specificity any parties that she believes are in receipt of her information, besides Raley's and its third-party email provider. These parties, which have a much smaller reach than companies like Facebook and Google, described in the *Nienaber* decision, do not satisfy the publication standard. Moreover, Plaintiff has failed to allege how Raley's or its third-party email provider have (or even would) publish her information so that it would become *public knowledge*, nor does she even suggest that the publication of such mundane information would be "highly offensive to a person with ordinary sensibilities." *See Nienaber,* 2024 WL 2133709 at \*10. Plaintiff also fails to allege facts regarding any actual harm that she has sustained due to Raley's alleged disclosure of her information. Instead, Plaintiff has attempted to rely on conclusory allegations that her "private information" was "revealed" to establish a concrete injury. *See* Compl. at ¶ 66. Such allegations are insufficient to confer Article III standing.

Accordingly, the Court should dismiss the Complaint pursuant to Rule 12(b)(1).

## II. PLAINTIFF HAS NOT ALLEGED AND CANNOT ALLEGE A VIABLE TUCSRA VIOLATION.

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662

(2009).  Dismissal under Rule 12(b)(6) is warranted where a complaint lacks "a cognizable legal theory" or "sufficient facts alleged" under a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc*., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.  Plaintiff Has Not Alleged a TUCSRA Violation.

As Plaintiff acknowledges, the TUCSCRA was enacted to address pretexting, which is the practice of pretending to be someone else to obtain that person's proprietary information, such as phone records.  Pretexting is, of course, a particular kind of fraud.

The Legislature's specific concern was that "over 40 'data broker' companies" had "fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge, a practice known as 'pretexting.'" Ariz. Sen. B. Summ., 2006 Reg. Sess., H.B. 2785 (Apr. 24, 2006).  In other words, the harm that the TUCSRA was meant to address was that an individual would fraudulently obtain information created and held by communication service providers.  While the original statute protected only "telephone records," the Legislature subsequently included "communication service records" and "public utility records."  Again, the concern was that pretexters could "pretend that they're someone else and get your personal information from a utility." H.B. 2726: Hearing Before the Sen. Comm. On Commerce & Econ. Dev., 48th Leg. 1st Reg. Sess. (Ariz. 2007) (statement of Sen. Farnsworth).

Consistent with that purpose, the TUCSRA makes it unlawful for a person to "[k]nowingly procure ... [a] communication service record" of any Arizona resident "without the authorization of the customer ...." The statute defines "communication service record" as including "subscriber information" like a person's "name, ... electronic

account identification and associated screen names ... or access logs," as well as "records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as ... electronic mail ... or other service features." A.R.S. § 44-1376(1).

Plaintiff now attempts to apply this law to a context in which it was never intended and to which its plain language does not apply.  Indeed, in light of this history and context, the inaccuracy of Plaintiff's describing the TUCSRA as "Arizona's email tracking law" arising from a 2005 "tracking scandal" is particularly stark.  *See* Compl. ¶ 34.  The TUCSRA was never about email tracking, nor could it be interpreted as such today.  As discussed in greater detail below, Plaintiff's tortured attempts to connect pretexting to email tracking pixels is the proverbial fitting of a square peg into a round hole.

**1. Raley's Is a Party to the Communication, Not A "Communication Service Provider" Under the TUCSRA.**

The Complaint's sole theory of liability is that Raley's "procure[d]" Plaintiff's "communication service records" without her permission in violation of § 44-1376.01(A).  Compl. ¶ 61.  But the Complaint does not allege that Raley's provides a "communication service."  The TUCSRA's plain language shows that the statute applies only to records maintained by communication service *providers*—not ordinary retailers or parties to the communications, like Raley's.  The TUCSRA defines "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic communication or a telephone record.

A.R.S. § 44-1376(1). That the statute only applies to communication service providers is made clear by the definition's reference to "the nature of the ***communication service*** provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features." *Id.* (emphasis added). Further, the records included in this definition, such as "installation address" and "length of service" of a subscriber, are the types of information that only a provider of communication services, such as a telephone carrier, would maintain.

The statute's parallel provisions further evidence the Legislature's focus on providers of various services. It applies not only to "communication service records," but also to "public utility records" and "telephone records." *See* A.R.S. § 44-1376(1). A "telephone record" is a record of a telephone company regarding a customer's telephone service. A.R.S. § 1376(7). And a "public utility record" is a record of a public utility regarding a customer's public utility service. A.R.S. § 1367(4).

To ensure consistency, the Court should construe "communication service record" as limited to records maintained by a communication service provider. This reading is supported by other statutes governing communication service records, such as the Arizona Eavesdropping and Communication Act ("ECA"). AZ ST § 13-3018. The ECA provides a procedure for criminal prosecutors to subpoena "communication service records." It contains an identical definition of "communication service record," and explains that a prosecutor may obtain a communication service record by issuing a subpoena "to a communication service provider," and that such records would be "used and kept by the communication service provider." *Id.* § 13-3018(B), (D)(1).

Raley's is not, nor is it alleged to be, a communication service provider. Nor does Plaintiff claim to have been a "subscriber" to any "service," such that her "subscriber information" would constitute a communication service record. The references to "billing or installation address," "length of service," "toll bills," and "access logs," reinforce this reading, making clear that the law contemplates a communication *service* subscribed to by

a customer. Because Raley's is not a communication service provider, the TUCSRA does not apply.

### 2. The Information at Issue Is Not A "Communication Service Record" Under the TUCSRA.

The TUCSRA provides that a person shall not "[k]nowingly procure, attempt to procure, solicit or conspire to procure" a "communication service record of any resident of [Arizona] without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." A.R.S. § 44-1376.01. Again, A.R.S. § 44-1376(1) defines "communication service record" as including:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

The statute excludes from the definition "the content of any stored oral, wire or electronic communication or a telephone record." *Id.*[3]

Plaintiff's claim fails because the information at issue is not covered by the TUCSRA, which on its face applies to the records of a "communication service." As discussed above, Raley's is a retailer, not a communication service provider, and the Complaint does not plead that Raley's procured records about her from a communication service. Rather, the subject of the Complaint is records relating to the email communications from Raley's to Plaintiff. The distinction between Raley's own records and the records of a communication service is manifest in the types of records included

---

[3] Aside from the recent wave of actions espousing this same theory against others (*see Hartley*, No. CV 23-4891, 2024 WL 3445004 *8, n.54 (collecting cases)), Raley's is unaware of the TUCSRA being invoked outside of criminal matters. *See, e.g., State v. Zuck*, No. 2 CA-CR 2019-0130, 2021 WL 2103598 (Ariz. Ct. App. May 25, 2021).

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

1    within the operative definition (*i.e.,* billing and installation address, length of service,

2    payment method, etc.), which is the information the Arizona Legislature sought to protect

3    third parties from surreptitiously accessing.[4]   Despite Plaintiff's allegations to the

4    contrary, information regarding "when, how, and how many times [she] accessed

5    [Raley's] emails," along with her "general location" at the time the emails were accessed

6    (Compl. ¶ 66), is not information included or contemplated within the definition of

7    "communication service record."  *See Ctr. for Biological Diversity v. Norton*, 240 F.

8    Supp. 2d 1090, 1099 (D. Ariz. 2003) ("It is a canon of statutory construction that words

9    should not be added to or read into a statute.").

10
11              a.   *Plaintiff does not plausibly allege that Raley's collected "records of the*
                     *path of an electronic communication between the point of origin and the*
12                   *point of delivery" without her permission.*

13           Plaintiff does not plausibly allege that such records constitute "records of the path

14   of an electronic communication between the point of origin and the point of delivery."

15   Compl. ¶ 61. Rather, Plaintiff alleges that tracking pixels obtain information about when

16   and where an email was opened, how it was opened, how many times it was opened,

17   whether it was forwarded, and the like.  *Id.* ¶ 62. Assuming these allegations are true,

18   none of these events can logically occur until *after* an email is delivered (or "the point of

19   delivery," using the TUCSRA's parlance).  In other words, the tracking pixel cannot track

20   "when" an email was opened, "where" the email was opened, "how many times" it was

21   opened, "whether the emails were forwarded" or the like until the email is in fact

22   delivered.  Thus, the information Raley's is accused of illegally procuring (*see* Compl. ¶

23   62) is excluded from the category of communication records "*between* the point of origin

24   and the point of delivery."

25

26   _____

27   [4] Specifically, the Arizona Legislature was concerned with data brokers who "fraudulently
     gained access to telephone records by posing as the customer, then offering the records for
     sale on the Internet without the customer's consent or knowledge, a practice known as
28   'pretexting.'" Ariz. H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (Apr. 24, 2006).

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona  85004-2556
602.382.6000

*b. Plaintiff does not plausibly allege that Raley's collected "access logs" without her permission.*

Finally, Plaintiff contend that Raley's alleged documentation of "when, how, and how many times [she] accessed [Raley's] emails," along with her "general location" at the time the emails were accessed, constitutes an "access log" under the TUCSRA. Compl. ¶¶ 43, 67. But labeling this information as an "access log" does not make it so. A "communication service record" is not concerned with the way a user interacts with a given communication or communicator (*i.e.,* Raley's emails), but rather her interaction with the "communication service." Other examples of "subscriber information," like "length of service," "installation address," and "payment method," indicate as much. A.R.S. § 44-1376(1). Thus, the natural meaning of "access log[s]" refers to logs of when a consumer used an email *service* (or other communication service), not when they accessed an individual email or interacted with its content. There is no basis to conclude that it protects logs of interactions with specific messages, as Plaintiff would have the Court conclude.

## CONCLUSION

For the reasons discussed above, Raley's respectfully requests that the Court dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

DATED this 23rd day of September, 2024.

SNELL & WILMER L.L.P.


By: *s/Gregory J. Marshall*
Gregory J. Marshall (#019886)
Emily R. Parker (#036286)
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070

*Attorneys for Defendant Raley's Arizona LLC d/b/a Bashas'*

4855-0074-7487

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000