Gregory J. Marshall (#019886)
Emily R. Parker (#036286)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
gmarshall@swlaw.com
eparker@swlaw.com

*Attorneys for Defendant Raley's Arizona LLC d/b/a Bashas'*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Renay Kristapher, individually, and on behalf of those similarly situated,

Plaintiff,

v.

Raley's Arizona LLC d/b/a Bashas',

Defendant.

No. CV-24-02037-PHX-KML

**RALEY'S ARIZONA LLC'S REPLY SUPPORTING ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT [ECF No. 11]**

Snell & Wilmer L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Defendant Raley's Arizona LLC ("Raley's") replies in support of its Motion to Dismiss the Complaint.

**INTRODUCTION**

Plaintiff's Response takes a contradictory, evasive position on her alleged injury, on the one hand urging this Court to *summarily* remand without analyzing standing while on the other hand never disclaiming that she seeks *actual privacy damages* on behalf of herself and the putative class. These arguments bring focus to the reality that Plaintiff's alleged damages are premised on unsettled law regarding intangible, privacy harms. As Plaintiff's own cited authorities demonstrate, federal courts tend to summarily remand only when *both sides* agree that standing is absent based on binding authority. But when, as here, damages are contested, courts engage in a substantive standing analysis. And Raley's raising this question at the outset to avoid the possibility of this Court or an appellate court deciding after potentially years of litigation that jurisdiction was lacking all along was appropriate action for Raley's to take. Nor should Raley's be precluded from exercising its removal right when this Court may disagree that Plaintiff lacks standing. Against this backdrop, Raley's had an objectively reasonable basis to remove, and this Court should adjudicate the issue of standing on its merits. Further, if the Court finds standing, it should dismiss the Complaint on the merits, as the Pima County Superior Court recently did in a nearly identical complaint, raising identical issues, filed by the same Plaintiff's counsel here, finding that "[i]nformation collected by a tracking pixel in a marketing email—including when an email was opened, how long it was opened, the device used, and the associated IP address—is not a communication service record as defined by the [TUCSRA]." *See D'Hedouville v. H&M Fashion*, Case No. C20243386 (Ariz. Superior Ct., October 11, 2024), attached as Ex. 1.

**ARGUMENT**

**I. THE COURT SHOULD INDEPENDENTLY ANALYZE STANDING.**

Tellingly, the Response never addresses the substance of the Motion's standing analysis. Rather, the Response argues that "Raley's has abandoned its burden of showing

Article III standing," inviting this Court to remand summarily, without analyzing whether Plaintiff's TUCSRA claim alleges "injuries with a close relationship" to privacy torts. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Summary remand is inappropriate, as the Response's own cited authorities reveal the flaw in this argument and why the Motion is readily distinguishable, warranting a careful standing analysis.

In each of the decisions resulting in remand that Plaintiff cites, *both* parties agreed that the plaintiff lacked standing. *Collier v. SP Plus Corp.*, 889 F.3d 894, 895 (7th Cir. 2018) ("[B]oth parties insist[ed] that the plaintiffs lack Article III standing to sue."); *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 911 (N.D. Ill. 2016) ("Plaintiff does not dispute that I lack jurisdiction …"); *Parrish v. Everi Payments Inc.,* 2023 WL 3276400, at *2 (D. Nev. May 4, 2023) ("The parties agree that Plaintiff lacks Article III standing."); *Pioneers Mem'l Healthcare Dist. v. Imperial Valley Healthcare Dist.*, 2024 WL 3858135, at *4 (S.D. Cal. Aug. 19, 2024) ("The Parties thus agree [regarding standing that] Petitioner cannot challenge AB 918 'in its own capacity' on federal equal protection grounds.").

This consensus was based on binding authority that precluded standing. Indeed, nearly all these decisions involved the Fair and Accurate Credit Transaction Act ("FACTA"), which prohibits businesses from including a customer's full credit card number on a receipt, but which cannot support standing through a mere technical violation. *E.g.*, *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 777 (9th Cir. 2018). The Response's only non-FACTA, remanded case, *Pioneers Memorial Healthcare District*, similarly involved a precluded standing argument. 2024 WL 3858135, at *13 ("[T]he Ninth Circuit has been exceedingly clear that its political-subdivision rule [precluding standing for such entities] remains alive and well."). Given the binding authority and the parties' resulting consensus, it is unremarkable that the courts in the Response's examples remanded with often little to no analysis.

But these narrow, cherry-picked examples do not support the premise that cases should be summarily remanded any time a removing defendant challenges the existence of

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

damages. *Zhang v. Ancestry.com Operations Inc.*, No. 21-CV-07652-LB, 2022 WL 718486, at *4 (N.D. Cal. Mar. 10, 2022) ("removal is not inconsistent with later challenges to standing") (*citing Int'l Union of Operating Eng'rs v. Cnty. of Plumas*, 559 F.3d 1041, 1044 (9th Cir. 2009)). Indeed, in *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 963 (9th Cir. 2018), another of the Response's cited authorities, the defendant removed a putative class action involving claims of fraud and false advertising under CAFA and then moved to dismiss the plaintiff's request for injunctive relief to prevent future violations. Rather than summarily conclude that the defendant "abandoned its burden" – the bright-line rule the Response wrongly proposes – the Ninth Circuit extensively analyzed standing, ultimately resolving a "district court split" on whether a consumer has standing to enjoin such conduct. *Id*. at 969.

Plaintiff here, by contrast, has *not* conceded a lack of standing or cognizable damages. Instead, the Response doubles down on her theory by devoting its leading two sections to describing how Raley's alleged practices allow it "to compile a digital dossier of Plaintiff's private email habits," including discussing a university study demonstrating that the "tracking pixels…would reveal" information such as "(1) the likely location of her place of work, (2) that she usually reads email on her iPhone, (3) that she goes to a nearby city to spend Friday evening, (4) that she returns back to her city of residence very late, and (5) that she goes to sleep after midnight." ECF No. 12 at 2, 4 (cleaned up). While the Motion synthesizes the limited authority on specific issues such as "read receipts" and IP addresses, the Response implicitly contends that Plaintiff's damages are more invasive.

But unlike the FACTA cases that the Response cites, there is no binding authority resolving these questions, as demonstrated by the Motion's reliance on district court decisions from across the country, cited for their persuasiveness, not because their authority is binding. Indeed, neither the Ninth Circuit nor the U.S. Supreme Court have addressed how the latter's refined view of standing – following *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), and *TransUnion* – applies to the intersection of intangible privacy harms and technology. And though district courts have tackled narrow issues like

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

IP addresses, the overall legal landscape on privacy harms post-*Spokeo* and *TransUnion* remains muddled.

Indeed, circuit courts after *Spokeo* and *TransUnion* are split on whether standing exists in data-breach cases involving hackers obtaining individuals' data. *Compare Clemens v. ExecuPharm Inc*., 48 F.4th 146, 157 (3d Cir. 2022) (finding that contract-based claims were sufficiently concrete and analogous to "disclosure of private information" given that a specific hacker group was able to access employee data and then placed it on the Dark Web), *with In re SuperValu*, 870 F.3d at 771 (8th Cir. 2017) (finding, in a case involving hackers obtaining shopper credit card information, that "plaintiffs have not alleged a substantial risk of future identity theft" [and] "the time they spent protecting themselves against this speculative threat cannot create an injury"), *and id*. at 769 (noting that circuit courts have "differing conclusions on the question of standing" in privacy, data-breach cases). There is thus undeniable tension in the viability of such privacy-based damages.

Further adding to the complexity of this landscape is *TransUnion*'s emphasis that the required showing for standing varies between damages and injunctions. 594 U.S. at 436 ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). "Where the plaintiff seeks injunctive relief, the allegation of a risk of future harm alone can qualify as concrete as long as it 'is sufficiently imminent and substantial.' However, where the plaintiff seeks only damages, something more is required." *Clemens*, 48 F.4th at 155 (cleaned up) (quoting *TransUnion*, 594 U.S. at 435). Plaintiff here not only seeks expansive privacy-based *damages* but also requests that this Court "enjoin[] Defendant from engaging in the wrongful and unlawful acts" she alleges. ECF No. 1-1 at 17. So, although Plaintiff now knows of Raley's alleged marketing practices, she nonetheless seeks to prevent future harm to herself (and others).

Ultimately, the foregoing analysis demonstrates that the Motion raises valid standing concerns best raised at the case's threshold. But given the unsettled law on intangible privacy torts, the Court should decline her invitation to *summarily* remand and

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

instead independently determine whether it has subject-matter jurisdiction. *See Dutta v. State Farm Mut. Auto. Ins. Co*., 895 F.3d 1166, 1171 n.3 (9th Cir. 2018) ("Although we affirm the district court's determination that it lacked subject matter jurisdiction over Dutta's claim due to lack of standing, 'a trial court does have jurisdiction to determine its own jurisdiction.'"). Absent such independent review, Plaintiffs would be incentivized to advocate for remand while contradictorily highlighting their damages – all with a clear intent to advance those same damages upon remand.

If the Court remands, an award of fees is certainly unwarranted. As the Response acknowledges, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) *only* where the removing party lacked an objectively reasonable basis for seeking removal." (emphasis added). As addressed above, no binding precedent forecloses standing and Plaintiff has only emphasized and not disclaimed her theories of actual damages. And notably, even in *Collier*, the Seventh Circuit "decline[d] to award … attorney fees or expenses under § 1447(c)" despite the binding circuit authority regarding FACTA claims. 889 F.3d at 897; *see also Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 725 (7th Cir. 2016) (finding that FACTA violations cannot support standing prior to *Collier*).

The Response's request also ignores the Motion's procedural posture, which raised standing as an argument in the alternative. Because of the unsettled legal landscape described above, it was (and remains) uncertain whether this Court would find standing, and Raley's thus separately sought to dismiss the Complaint under FRCP 12(b)(6) for failing to state a cognizable claim under the TUCSRA. The Response likewise engaged extensively in that analysis. ECF No. 12 at 9–14. Accordingly, there is a scenario in which this Court finds standing and then reaches the merits of Plaintiff's claim, which demonstrates that Raley's lodged its Motion in good faith to have this Court adjudicate the novel legal theory asserted in this putative class action.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

## II. THE TUCSRA'S TEXT AND HISTORY RULE OUT PLAINTIFF'S THEORY.

While Raley's agrees that the plain text of the TUCSRA is clear and unambiguous, it is so in a way that forecloses Plaintiff's theory. But if there is any plausibility to Plaintiff's reading, then she must also concede that the legislative history is relevant and dispositive. *See, e.g.*, *Flowers-Carter v. Braun Corp.*, 530 F. Supp. 3d 818, 833 (D. Ariz. 2021) ("When a statute's plain language is unambiguous in context, it is dispositive," but where "the text alone does not resolve the parties' dispute, [the court] must attempt to glean and give effect to the legislature's intent, considering the statute's context, effects and consequences, and spirit and purpose." (*quoting In re Drummond*, 543 P.3d 1022, 1025 (Ariz. 2024), *McKenna v. Soto*, 481 P.3d 695, 698 (Ariz. 2021))); *id*. ("When an Arizona court interprets a statute, the 'goal is to effectuate the legislature's intent.'" (quoting *McKenna*, 481 P.3d at 698)). Here, neither a textual nor historical approach to the TUCSRA supports Plaintiff's theory. Either way, Plaintiff's reading of the TUCSRA cannot prevail, as it strains the statutory text and purpose beyond all recognition.

### A. Plaintiff's Construction Reads the Word "Service" Out of "Communication Service Records."

While eschewing Raley's analysis of the TUCSRA's legislative history, Plaintiff nonetheless undertakes her own legislative analysis in attempting to demonstrate that her expansive definition of "communication service record" is correct. Resp. at 11-12. In fact, Plaintiff's analysis is untethered to Arizona's statutory approach, which leads to the ineluctable conclusion that the TUCSRA applies to "records" of a "communication service," and neither Raleys, nor Plaintiff, is a "communication service."

The TUCSRA does not provide an exhaustive definition of "communication service records," but it includes "subscriber information" including an enumerated list of objects. A.R.S. § 44-1376(1). Under this formulation, "when the legislature does not define a term, but states that the term 'includes' specified items, we construe the term to also include other terms that fall within the term's ordinary meaning." *State ex rel. Dep't of Econ. Sec. v. Torres*, 431 P.3d 1207, 1211 (Ariz. Ct. App. 2018). Thus,

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

"[c]ommunication service records" can only be "records" of a "communication service," and the non-exhaustive list of items fall within that realm: "billing or installation address, length of service, payment method," etc. For that same reason, such terms do not include, for example, "when and how an email communication is accessed." *See* Resp. at 11.

In laboring to avoid this common-sense construction, Plaintiff argues that the legislature's amending of the TUCSRA in 2007 "omitt[ed] any requirement that the 'communication service record' be 'retained by' a service provider." Resp. at 12. This argument ignores the point and mischaracterizes the history, which shows only that the 2007 Amendment: (1) added "communication service records" as a new statutory term, along with two others relating to public utilities; (2) added to the definition of "telephone record"; and (3) did not omit (just restyled) language from the definition of "telephone record." *Compare* A.R.S. § 44-1376 (West 2006), *with* A.R.S. § 44-1376 (West 2007). Whether a communication service "retains" the records is irrelevant to what that phrase means—what matters is that "communication service records" are "records" of a "communication service," regardless of who retains those records.

Rejecting Plaintiff's reading aligns with the Arizona Eavesdropping and Communication Act ("<u>ECA</u>"). A.R.S. § 13-3018(B), (D)(1). The ECA contains an identical definition of "communication service record," and provides that a prosecutor may obtain a communication service record by issuing a subpoena "to a communication service provider," and that such records would be "used and kept by the communication service provider." *Id.*; *see also Stambaugh*, 398 P.3d at 575 ("In construing a specific provision, … we may also consider statutes that are *in pari materia*—***of the same subject*** or general purpose—for guidance and to give effect to all of the provisions involved." (emphasis added)). To this point, Plaintiff has no rejoinder.

**B. Conflating "Access Log" With Records from a Party to the Communication Produces Absurd Results.**

Plaintiff's misreading of the TUCSRA further falls short because her proffered definition of "access log" (1) is not the plain text definition; and (2) would lead to absurd



Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

results in applying to email read-receipt technology between parties to the communication. As Raley's argued, the only reasonable definition of "access log" refers to a record of a "communication service," not the records of a party to the communication (*i.e.,* Raley's, as a retailer, and Plaintiff, as its customer).[1]

First, the plain text of the TUCSRA confirms that "access logs" do not include "records about when and how emails are accessed." Resp. at 11. The list of terms defining "communication service record" does not include records of how an individual interacts with a particular communication (like an email), but rather her interaction with the "communication service." *See* Mot. at 17; *see also* A.R.S. § 44-1376(1) (listing, *inter alia*, "billing or installation address," "length of service," and "toll bills"); *see also Flowers-Carter*, 530 F. Supp. 3d at 833 (determining plain text meaning "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole").

In making her strained argument, she conflates "toll bills" with "toll records," failing to provide the dictionary definition of "toll bill,"[2] and relying on the irrelevant definition of "toll records" from an unpublished District of Nevada case unrelated to any statutory analysis to substantiate her argument that "toll" includes "records of 'incoming

---

[1] Plaintiff's definition of "access log" is grammatically lacking, an accurate version of which is necessary for the plain text analysis Arizona law requires. *See Stambaugh*, 398 P.3d at 575. An "access log" is a noun phrase, composed of an attributive noun ("access") and a modified noun ("log"). *See* Merriam-Webster Usage Notes, "Nouns That Look Like Adjectives," https://www.merriam-webster.com/grammar/nouns-that-look-like-adjectives#:~:text=An%20attributive%20noun%20is%20a,the%20phrase%20'singles%20bar'.&text=In%20each%20of%20these%2C%20the,it%20is%2C%20modifying%20another%20noun (last visited Oct. 23, 2025) (explaining that "[a]ttributive nouns do some of the same work that adjectives do," but are still nouns). Plaintiff's analysis blurs this distinction, using two verbs (*i.e., **actions***) to define both "access" and "log," rather than nouns (*i.e., **things***), which is their usage in the statute. *Compare* Resp. at 10, *with* A.R.S. § 44-1376(1); *compare also* Resp. at 10, *with* Access, Merriam-Webster, https://www.merriam-webster.com/dictionary/access (last visited Oct. 23, 2024) (defining noun version of "access"), *and* Log, Merriam-Webster, https://www.merriam-webster.com/dictionary/log (last visited Oct. 23, 2024).

[2] *See* Toll, Merriam-Webster, https://www.merriam-webster.com/dictionary/toll (last visited Oct. 23, 2024) (defining, *inter alia*, as "compensation for services rendered: such as…a charge for a long-distance telephone call.")

and outgoing calls for telephone lines.'" *See* Resp. at 11 (quoting *United States v. Salgado*, 2018 WL 772079, at *4 (D. Nev. Feb. 7, 2018)). She then bootstraps her flawed "toll bill" analogy by arguing that "access log" can likewise apply to how and when emails are accessed. But "toll" and "record" are not synonymous, and the TUCSRA does not use the term email in conjunction with (or otherwise modifying) "access log."

The TUCSRA *does* include the terms "electronic mail" and "electronic communication" but not to modify "access log." *Contra* Resp. at 14 (arguing that the Complaint "alleges that Raley's procures email 'access logs'" (citing Compl. ¶¶ 22, 28, 33, 38, 43-44, 61)). If the Legislature wanted "access logs" to apply to a consumer's interaction with a single email, it would have done so. *See, e.g.*, *Sharpe v. Ariz. Health Care Cost Containment Sys.*, 207 P.3d 741, 749 (Ariz. Ct. App. 2009) ("When the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded." (quoting *Luchanski v. Congrove*, 971 P.2d 636, 639 (Ariz. Ct. App. 1998))).

For this same reason, Plaintiff's argument that Raley's "tracks the path of [the] electronic communication to…the point of delivery," Resp. at 13 (internal quotation marks omitted), is similarly wrong. Plaintiff argues that "anytime an Arizona resident forwards an email containing one of Raley's tracking pixels," *id.*, Raley's has somehow obtained "records of the path of an electronic communication between the point of origin and the point of delivery." A.R.S. § 44-1376(1). This ignores the statutory requirement that those records be "***between*** the point of origin and the point of delivery." *Id.* (emphasis added). That is not what Plaintiff alleges here, which focuses only on (1) the point of origin (Raley's); and (2) the point of delivery (Plaintiff), with no focus on the path taken between those two points.

<u>Second</u>, Plaintiff's proffered definition of "access log" would lead to widespread and absurd results. To be sure, if Plaintiff's offered definition applies, the TUCSRA would apply to every email sender requesting a read receipt from the recipient, which informs the sender that the email was received and opened. *See, e.g.*, *In re MH 2013-*

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

*004303*, 1 CA-MH 16-0028, 2017 WL 443539, at *1 (Ariz. Ct. App. Feb. 2, 2017) (describing operation of read receipt functionality; namely, "request[ing] a read receipt that indicates [appellant] accessed the e-mail on 2/12/16")[3]; *see also* Doc. 1-1 (Compl.), ¶ 26 (alleging that "approximately 40 percent of all emails are tracked using some form of tracking pixel"). This absurd result prevents application of Plaintiff's proposed definition of "access log." *Flowers-Carter*, 530 F. Supp. 3d at 833 (confirming plain text definition does not control if "an absurdity…results").

### C. Plaintiff's Definition of "Procure" Requires Reading Nonexistent Words into the Statute.

As demonstrated above, Plaintiff's Response conflates a party receiving information about the communication (*i.e.,* a signal) with a pre-existing, already compiled record (*i.e.,* a "log"). The statute defines "[p]rocure" as "to obtain by any means…" A.R.S. § 44-1376(2). Thus, the definitions of "procure" (and "obtain") necessitates the existence of a pre-existing object (*i.e.,* a "log"). *See id.*; *see also* Obtain, Merriam-Webster, https://www.merriam-webster.com/dictionary/obtain (last visited Oct. 23, 2024) (defining as "1: to gain or attain usually by planned action or effort"). But Plaintiff's argument conflates *creating* a record with *obtaining* a record. *See, e.g.*, Create, Merriam-Webster, https://www.merriam-webster.com/dictionary/create (last visited Oct. 23, 2024) (defining as "1: to bring into existence"). The TUCSRA does not apply to the former.

### D. Any Ambiguity Requires Consideration of the Legislative History, Which Obviates Plaintiff's Theory.

If this Court finds ambiguity here, the analysis becomes even simpler. That is because the legislative history makes clear that "communication service record" refers to

---

[3] *See also* "Request or return a read receipt," Google, https://support.google.com/mail/answer/9413651?hl=en#:~:text=To%20find%20out%20when%20an,when%20your%20message%20was%20opened (last visited Oct. 23, 2024) ("A read receipt is sent to you as an email with the time and date of when your message was opened.").

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

third-party communication service providers' records, namely, to prevent the practice of "pretexting" by "fraudulently gain[ing] access" to providers' records by "posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge," not direct email marketing. Mot. at 12-13 (quoting Ariz. Sen. B. Summ., 2006 Reg. Sess., H.B. 2785 (Apr. 24, 2006)); *see also, e.g.*, *McCarthy Integrated Sys., LLC v. Evoqua Water Techs., LLC*, 379 P.3d 263, 267 (Ariz. Ct. App. 2016) ("Because [undefined terms are] ambiguous, we look beyond the plain language by applying canons of statutory construction and considering the statute's legislative history…"). Tellingly, Plaintiff has not even attempted to argue that the legislative history supports her construction. It plainly does not. That is why no court has adopted Plaintiff's flawed construction. Plaintiff's urging the Court to ignore this helpful legislative history is an outcome-driven argument rather than based on her devotion to canons of statutory interpretation.

**CONCLUSION**

Raley's respectfully requests that the Court independently analyze the question of Plaintiff's Article III standing, and if jurisdiction resides in this Court, then Raley's requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6).

DATED this 23rd day of October, 2024.

SNELL & WILMER L.L.P.

By: *s/ Gregory J. Marshall*
Gregory J. Marshall
Emily R. Parker
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556

*Attorneys for Defendant Raley's Arizona LLC d/b/a Bashas'*

4860-1225-9570